By the Court, Cowes, J.
The question is, whether the de- • fendants were right in preferring Austin, and making the/las t| ■ payment to him instead of Doty. Doty had the nreTassi^h- | ment from the obligee, and, as between him and Austin, was entitled to _the jnoney. In a conflict of equitable claims, the rule is the same at law as in equity, qui prior est tempore, potior e~l est jure. There was no need of notice to Austin for the purpose of securing .the preference as against him; and Austin might have been compelled at the election of Doty to pay over to him the last installment received from the defendants. _But before that installment was paid, he chose to fix the defendants by giving notice of his right to them, and forbidding the payment of any more to Austin. The payments were correctly made to the latter, till notice. The payment afterwards, was in the defendants’ own wrong. The notice, when it came, afforded them a complete protection, and had the farther effect to render what was before an inchoate right in Doty, perfect from the beginning. As Austin had never any right to receive, the defendants had now no right to pay. No one would doubt that the first assignment divested the right of the obligee, though the legal interest remained in him. Could he transfer to Austin a greater right than his own 1 His legal interest was not assignable ; and he had parted with all his equitable right. Does it not follow that nothing remained for Austin 1 __I
The decision at the circuit, I admit, derives some degree of countenance from the remarks made by Chancellor Kent in Murray v. Lylburn, (2 John. Ch. Rep. 441, 443.) I allude to the view there taken of Redfearn v. Ferrier, (1 Bow’s Pari. Cas. 50,) which the learned Chancellor supposed should perhaps be received as a qualification of the rule laid down by Lord Thurlow, in Davis v. Austin, (1 Ves. Jun. 249,) who said : “ A purchaser of a chose in action must always abide by the case of the person from whom he buys ; that I take to be an universal rule.” True, his lordship was speaking of the *231 case of the assignor, as it stood between him and the debtor ; yet the same rule has been often applied to a case as between him and one of his previous assignees. Nothing is better settled, for instance, than that the previous assignment of a 'chose in action will prevent its passing to assignees by a general assignment under the bankrupt or insolvent acts; an assignment carrying even the legal right, and this too, without notice either to the debtor or the subsequent assignees. OrdinarP-} ly, any notice to subsequent conventional assignees must be out of the question; for the first assignee cannot know who they will be. Notice to the debtor might, I admit, afford them a better chance ; for then there would be one of whom they might enquire, and of whom they naturally would., enquire. This might prevent fraud ; and, to require it, would therefore , perhaps be very proper. It is required by the law of Scotland, as appears by Redfearn v. Ferrier, which was decided upon the Scotch law. By that law there must be what is called an intimation to the debtor, before the assignment is perfect and secures a complete preference even as against a subsequent assignee. In suggesting, however, that such is perhaps the law of England or of this state, Chancellor Kent admitted that he was doing what was not necessary to the decision of the case under his consideration, which turned on a point entirely different, viz. a lis pendens operating as constructive notice. In Livingston v. Dean, (2 John. Ch. Rep. 479,) there was actual notice. But neither Redfearn v. Ferrier, nor the two cases decided by Chancellor Kent, related to a previous express assignment. There was scarcely the semblance of such an assignment, but only a trust to be inferred by the court of chancery from circumstances—a sort of implied trust—a creature peculiar to that court. The prior right claimed, was spoken of as a latent equity. As between express assignments, I take the law to be correctly laid down "by Parker, C. J. in Wood v. Partridge, (11 Mass. Rep. 488, 491, 2.) He said : “ Between assignor and assignee the contract is complete with- - out any notice to the debtorand he considered the notice as in *232 '.-fi tended to protect the debtor alone. Story, J. in his learned work on the Conflict of Laws, (p. 328 to 330,) mentions the difference between the Scotch law and our own, admitting the necessity of intimation in the former. He says, that according to our law, an assignment operates, per se, as an equitable transfer of the debt, and he concedes that notice is necessary to protect the debtor; adding : “ But an arrest or attachment of the debt in his hands by any creditor of the assignor, will not entitle such creditor to a priority of right, if the debtor receive notice of the assignment pendente lite, and in time to avail himself of it in discharge of the suit against him.” That has been held in several cases. (Bholen v. Cleveland, 5 Mason 174, 176 ; Foster v. Sinkler, 4 Mass. Rep. 450 ; Fix v. Cobb. id. 508.) In Wood v. Partridge, this question between a previous assignee and a subsequent attaching creditor, was considered the same in principle as that between conflicting assignees. It is undoubtedly so. The principle has been declared by other cases. (White’s heirs v. Prentiss’ heirs, 3 Monroe, 510 ; Madeiras v. Catlett, 7 id. 477.) In Jordan v. Black, (2 Murph. 30,) the claim of the assignee presented a very strong equity. Hall, J. said, in substance that, 6< upon an examination of the authorities it would be found that the ground taken by the assignee of being a bona fide purchaser, is tenable by those persons only who have the legal title in them, and plead that they are purchasers for a valuable consideration without notice. By this plea they shew that they have as much equity on their side as their opponents ; and that being the case, a court of equity will not interfere and divest them of their legal title. All that the assignee shows is, that she purchased the assignor’s right to a chose in action. She has no legal, but only an equitable title.”
No fraud upon Austin’s rights is imputable to Doty. He entertained a confidence that the assignor would pay his claim, —p\ and that he should therefore not find it necessary to take measures for collecting the bond. He gave notice to the defendants as soon as he found himself disappointed.
*233 Nor is it any answer to Doty’s claim, that the defendants promised to pay Austin. It is said truly, that this, in an ordinary case, would have entitled him to an action in his own name. Prima facie it brought him within the rule, that an assignee of a chose in action may sue in his own name, on an express promise by the debtor to pay him.(a) This arises from consideration and privity; but in the case at bar, the assignment to Austin having failed of effect by reason of the prior assignment to Doty, there was no consideration for the promise. The case is the same as if Austin had held no assignment even in form. The last payment by the defendants was, therefore, made in their own wrong; and there must be a new trial, the costs to abide the event.
New trial granted,

 See Jessel v. The Williamsburgh Ins. Co., (ante, p. 88, 9,) and the eases there cited.